IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THEODORE M. JONES and §
SUSAN C. JONES, §
§
    Plaintiffs, §
§
v. § Civil Action No. 3:10-CV-2247-N
§
BANK OF AMERICA, N.A. and §
BAC HOME LOANS, L.P., §
§
    Defendants. §

## ORDER

    This Order addresses Defendants Bank of America, N.A. ("BoA") and BAC Home Loans Servicing, L.P.'s ("BAC") (collectively, "Defendants") motion to dismiss [18]. For the reasons that follow, the Court grants the motion in part and denies it in part.[1] The Court dismisses Plaintiffs' claims for: breach of contract; anticipatory breach of contract; unreasonable collection efforts; certain violations of the Texas Debt Collection Practices Act ("DCPA"), TEX. FIN. CODE § 392.001, *et seq.*; negligent misrepresentation and gross negligence; an order of accounting; and a declaratory judgment. However, the Court does not dismiss Plaintiffs' claims under section 392.304(a)(19) of DCPA or for violations of the Texas Property Code, trespass to try title, and quiet title.

---

    [1]The Court also grants Plaintiffs Theodore M. Jones and Susan C. Jones' (collectively, "Plaintiffs") motion to file a surreply [25]. The Court orders that the surreply attached to Plaintiffs' motion is deemed filed, and it considers Plaintiffs' surreply with the parties' other briefing on Defendants' motion to dismiss.

## I. ORIGINS OF DEFENDANTS' MOTION

This case concerns real property and a related mortgage. On or around December 12, 2005, Plaintiffs purchased the property[2] and executed a note payable to BoA. Pls.' First Am. Compl. ¶ 9. Plaintiffs executed a deed of trust to secure payment of the note. Approximately four years after they purchased the home, Plaintiffs also secured a home equity line of credit from BoA. BAC was at all pertinent times the agent and loan servicer for BoA. *Id.*

In 2009, Plaintiffs contacted Defendants to inquire about a loan modification, the possibility of making partial payments, or a forbearance agreement. *Id.* ¶ 10. Defendants' employees told Plaintiffs that they did not qualify for these programs because Plaintiffs were not past due on their payments. They also stated that Plaintiffs had to be three months behind on their payments to be considered for a loan modification and that partial payments would only complicate the loan modification process and would not benefit Plaintiffs. *Id.* Nonetheless, approximately one week later, Plaintiffs sent Defendants a written request for a forbearance. *Id.* ¶ 11. Defendants again informed Plaintiffs that they did not qualify for a forbearance or loan modification, and Plaintiffs continued to pay on their loans. *Id.*

In early 2010, Plaintiffs again contacted Defendants to seek a loan modification for both the principal mortgage and the home equity line of credit. *Id.* ¶ 12. Defendants' employees told Plaintiffs that they would have to submit an online loan application and certain financial documents in order to qualify for a loan modification. After applying online, Plaintiffs learned that they did not qualify for a modification because the note balance

---

[2]For purposes of this motion, the Court accepts as true Plaintiff's factual allegations. *See* Pl.'s First Am. Compl. ¶ 7 [10].

was too high.  *Id.*  However, one of Defendants' employees instructed Plaintiffs to submit a formal request for a loan modification, which Plaintiffs did in June 2010.  *Id.* ¶ 13.

On July 24, 2010, Plaintiffs received a letter informing them that BAC had appointed Recontrust Company, N.A. ("Recontrust") as a substitute trustee and that the property was subject to a substitute trustee's sale.[3]  *Id.* ¶ 14.  Plaintiffs contacted Recontrust, and employees of both Recontrust and Defendants said that Plaintiffs' only alternative to foreclosure was a "short sale."[4]  *Id.*

Plaintiffs began the short sale process, and Defendants allegedly assured them that the property was not scheduled for foreclosure.  *Id.* ¶ 15.  Plaintiffs received a few offers on the property.  But Defendants refused one offer because the offer amount was insufficient and refused another offer because BoA refused to approve the sale.  *Id.* ¶¶ 16, 19.  In addition, Defendants' assigned negotiator was out of town for a third offer, and, on the evening of

---

[3]Plaintiffs allege that they learned Recontrust was not the appointed substitute trustee as of the July letter.  Pls.' First Am. Compl. ¶ 15.

[4]A "short sale" is an alternative to foreclosure.  Nelse Thompson Miller, *Short Sale Overview with an Emphasis on Broker Issues*, 26 PRAC. REAL EST. LAW, No. 3, 2010 at 9, 9.  "In a short sale, the deed holder lacks sufficient equity in the property and liquid personal assets to pay off the mortgages, other liens, and selling expenses in order to provide clear title to the purchaser."  *Id.*  Thus, the lender agrees to "sell short," or sell the property for less than the outstanding mortgage principal, which will clear title for the purchaser.  *See id.*  A short sale is "essentially a normal transaction for the sale of property in which the seller's lender calls the shots."  *Id.*  After a lender approves the concept of selling short, the seller finds and negotiates a purchase agreement with a buyer contingent on the lender's approval, and the lender can accept, reject, or further negotiate the purchase agreement.  *Id.* at 9-10.

September 7, 2010, Plaintiffs received correspondence from the negotiator notifying them that Defendants had declined the sale.  *Id.* ¶¶ 16, 18.[5]

Plaintiffs later learned that Defendants had sold their home at a foreclosure sale on September 7, 2010.  *Id.* ¶ 19.  Plaintiffs went to the courthouse on September 7, 2010 "at the scheduled time" and allege that their home was not posted for foreclosure at the courthouse, no one from Recontrust was at the courthouse, and "Roddy's Foreclosure Listings" did not list the property.  *Id.* ¶ 17.

Plaintiffs subsequently brought suit against Defendants for (1) breach of contract and anticipatory breach; (2) unreasonable collection efforts; (3) violations of DCPA; (4) an order of accounting; (5) negligent misrepresentation or gross negligence; (6) violations of the Texas Property Code; (7) a declaratory judgment; and (8) claims for quiet title and trespass to try title.  *Id.* ¶¶ 23-49.[6]

## II. MOTION TO DISMISS STANDARD

To determine a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough

---

[5]Plaintiffs assert that the reason for refusal listed on the correspondence was "'seller has requested a different workout option,' which was completely false . . . ."  Pls.' First Am. Compl. ¶ 18.

[6]The parties seem to dispute which claims Plaintiffs actually bring.  However, the Court only addresses those of Plaintiffs' claims that Plaintiffs listed as causes of action in their First Amended Complaint.  It therefore does not consider other potential claims in the parties' briefing, including, for example, equitable estoppel.

fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

As the Supreme Court has observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).
>
> In keeping with these principles[,] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion then, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider certain documents outside of the pleadings if they fall within four limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[7] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (citation omitted). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir.2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir.2003)). And finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial

---

[7]In this case, that includes the Deed of Trust. *See* Pls.' First Am. Compl. ¶¶ 9, 24-26; Pls.' App. to Pls.' Resp. to Defs.' Mot. Dismiss, Deed of Trust [23-1] [hereinafter "Deed of Trust"].

notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS DEFENDANTS' MOTION IN PART AND DENIES IT IN PART

Defendants move to dismiss Plaintiffs' claims for breach of contract and anticipatory breach, unreasonable collection efforts, various violations of DCPA, negligent misrepresentation or gross negligence, violations of TEX. PROP. CODE § 51.002(b), trespass to try title and quiet title, an order of accounting, and a declaratory judgment, arguing that Plaintiffs fail to state claims which would entitle them to relief under each cause of action. The Court addresses each of Plaintiffs' claims in turn.

#### A. Plaintiffs Fail to State a Claim For Breach of Contract

Plaintiffs assert a number of bases for their breach of contract claim, and the Court considers each separately.

##### 1. Plaintiffs did not perform under the Deed of Trust. – Plaintiffs assert, somewhat conclusorily, that Defendants wrongfully foreclosed on the Property, violated Texas Property Code § 51.002, and breached the Deed of Trust contract. Pls.' First Am. Compl. ¶ 24. They base these claims on the alleged fact that "Defendants never gave Plaintiffs a notice of intent to accelerate, a notice of acceleration, or the right to cure and reinstate their note." *Id.* Under Texas law, Plaintiffs must prove the following elements to prevail on a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Am. Gen. Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010) (citing *Smith Int'l, Inc. v. Eagle Group, LLC*, 490 F.3d 380, 387 (5th Cir.

2007)); *see also, e.g.*, *Watson v. Citimortgage* ("*Watson II*"), 2012 WL 381205, at *4 (E.D. Tex. 2012); *Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *3 (N.D. Tex. 2012) (Boyle, J.).

The Court interprets Plaintiffs' argument to be:[8] (1) the Deed of Trust contains a provision that subjects the parties to "applicable law," which includes the Texas Property Code and other Texas state law, (2) Texas Property Code § 51.002(d) requires a mortgage servicer to "serve a debtor in default under a deed of trust . . . with written notice by certified mail stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of sale can be given;" (3) Plaintiffs point to some authority in Texas jurisprudence requiring a creditor to demand payment for past due installments and give a mortgagor/debtor an "opportunity to discharge the delinquent indebtedness before accelerating," *Diversified, Inc. v. Walker*, 702 S.W.2d 717, 719 n.1 (Tex. App. – Hous. [1st Dist.] 1985, writ ref'd n.r.e.),[9] (4) Defendants never gave Plaintiffs the required notice, (5) because the Deed subjects the parties to the Texas Property Code and state law, Defendants failure to give notice constitutes a breach of the contract.

However, the Court need not consider whether Defendants' alleged failure to give Plaintiffs notice constitutes a breach of the Deed under the third element of a breach of contract claim – that Defendants breached the contract – because Plaintiffs cannot establish

---

[8]Plaintiffs point to no provisions in the Deed of Trust, so the Court is left to guess at their breach theory.

[9]The Court does not opine on the correctness of Plaintiffs' assertion regarding the *Diversified* case.

the second element – that Plaintiffs performed or tendered performance.  *See Kirsch*, 378 F.

App'x at 383.  "An essential element of a breach-of-contract claim is 'performance or

tendered performance by the plaintiff.'"  *Obuekwe v. Bank of Am., N.A.*, 2012 WL 1388017,

at *5 (N.D. Tex. 2012) (Means, J.) (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418

(5th Cir. 2009)).  Though Plaintiffs try to omit the fact that they defaulted on the loan, the

Court's reading of Plaintiffs' complaint reveals that they did default.  *See* Pls.' First Am.

Compl. ¶¶ 9-17; *cf.* Pls.' Resp. 13, 17 ("Plaintiffs plead . . . that Defendants did not give them

an opportunity to *pay the past due installments* before acceleration of the entire indebtedness.

. . . Defendants' actions . . . prevented Plaintiffs from timely performing their contractual

obligations." (emphasis added)).[10]

    Plaintiffs, however, "allege[] that even if [they] did breach the contract and w[ere] in

default, [they] w[ere] in default because Defendants made it impossible for [them] to perform

---

[10]Nonetheless, even if Plaintiffs did not default – or fail to perform – their breach of contract claim based on lack of notice would still fail.  As this Court explained in *Woods*:

    [T]he . . . logic advanced by Plaintiff to sustain his breach of contract claim is flawed by the very facts Plaintiff presents in support of this claim.  Plaintiff relies on a provision of the Texas Property Code that requires mortgage servicers to serve debtor's a notice of default and opportunity to cure.  TEX. PROP. CODE § 51.002(d).  The provision itself is triggered when the debtor defaults by failing to perform or tender performance under the contract – an essential element under any breach of contract claim.  Here, however, Plaintiff alleges, that he continued to pay under the contract, even including increased amounts he believed he did not owe. . . . At no point does Plaintiff admit to being in default, only that he was "allegedly in default." . . . If such facts in Plaintiff's Amended Complaint are taken as true, the logical conclusion is that Plaintiff's breach of contract claim is premised on failing to receive a notice that was never in fact due under the law.  In such a scenario, the failure to provide notice, standing alone, would not constitute a breach of contract claim.

2012 WL 1344343, at *3.

ORDER – PAGE 9

the contract," and, therefore, their nonperformance is excused. *Woods*, 2012 WL 1344343, at *3; *see* Pls.' First Am. Compl. ¶ 26. "It is well established [in Texas] that a party's nonperformance of a contract will be excused when that party's performance is prevented by the other party." *Navarez v. Willshire Credit Corp.*, 757 F. Supp. 2d 621, 629 (N.D. Tex. 2010) (Lynn, J.) (citing *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App. – Hous. [1st Dist.] 2003, pet denied) and *Erickson v. Rocco*, 433 S.W.2d 746, 751-52 (Tex. App. – Hous. [14th Dist.] 1968, writ ref'd n.r.e.)). But Plaintiffs do not plead facts demonstrating how Defendants prevented their performance.[11]

In their response, Plaintiffs contend that, "[t]o the extent Defendants argue that Plaintiffs have not plead their own performance or tender of performance[,] . . . they are mistaken." Pls.' Resp. 8 [23]. Rather, Plaintiffs claim that their complaint alleges that Plaintiffs were not in arrears or default when they first started seeking loan modifications, but Defendants "encouraged them to skip at least three months of payments to qualify for a loan modification or forbearance." *Id.* However, Plaintiffs' characterization of their complaint is misleading. While their complaint does state that Plaintiffs were current on their payments the first time they spoke with Defendants in 2009, *see* Pls.' First Am. Compl. ¶¶ 10-11, it is clear that they later defaulted on their loan obligations, *see id.* at ¶¶ 9-17; *cf.* Pls.' Resp. 13, 17. And Plaintiffs nowhere plead in their complaint that Defendants "encouraged" them to skip loan payments, only that Defendants advised them that they would have to be three months behind on their payments to be considered for a loan

---

[11]They state: "Defendants' actions . . . prevented Plaintiffs from performing the contract." Pls.' First Am. Compl. ¶ 26.

modification. Pls.' First Am. Compl. at ¶ 10. Finally, Plaintiffs do not "allege that [they] tendered payment under the Deed of Trust and Defendants refused to accept or otherwise made it impossible for [them] to perform." *Woods*, 2012 WL 1344343, at *3 (citing *Burnett v. Wells Fargo Bank, N.A.*, 2011 WL 676955, at *5 (E.D. Tex.2011)). Because Plaintiffs did not perform under the contract, and because they provided no facts demonstrating how Defendants prevented their performance, Plaintiffs breach of contract claim fails. *See, e.g.*, *id.* at *3 (rejecting plaintiff's nonperformance argument where plaintiff alleged that defendants made it impossible for him to perform because they failed to communicate with him regarding his loan and modification); *Navarez*, 757 F. Supp. 2d at 629 (rejecting plaintiff's argument that defendants' actions made it impossible for him to perform under mortgage contract where plaintiff repeatedly claimed that the cause of his default was a violent attack at his home, and granting defendants summary judgment on plaintiff's breach of contract claim); *cf. Rey v. Acosta*, 860 S.W.2d 654, 658 (Tex. App. – El Paso 1993, no writ) (implying that a defendant deprives a plaintiff of "opportunity to pay" where the defendant refuses the plaintiff's tender of late payments by stating that "[a] creditor must give the debtor an opportunity to pay the past due installments before acceleration of the entire indebtedness; refusal of payments necessarily negates such an opportunity.") Nonetheless, the Court considers Plaintiffs' remaining theories of breach.

### 2. There is no requirement of good faith and fair dealing in the Deed of Trust contract. – Plaintiffs claim that, under Texas law, "the requirement of good faith and fair dealing is included in the performance of every contract" and that Defendants breached this general duty by misleading Plaintiffs "to the point of foreclosure." Pls.' First Am. Compl.

¶ 25. However, separate from any specific duty of care contained in the parties' contract, courts have held that mortgagors do not owe a duty of good faith or fair dealing to mortgagees. *E.g.*, *Woods*, 2012 WL 1344343, at *4; *Obekwe*, 2012 WL 1388017, at *5; *Wilkerson v. Citimortgage, Inc.*, 2011 WL 6937382, at *3 (N.D. Tex. 2011) (Toliver, Mag. J.) ("[A]s a matter of law, the Texas U.C.C.'s duty of good faith and fair dealing does not apply to the lender-borrower relationship."); *see also, e.g.*, *Setzer v. Richards*, 2012 WL 32943, at *5-6 (W.D. Tex. 2012) ("Texas courts have rejected the existence of any special relationship between a mortgagor and a mortgagee which creates an independent common law duty of good faith and fair dealing.") (collecting Texas cases); *King v. Wells Fargo Bank, N.A.*, 2012 WL 1205163, at *2 (N.D. Tex. 2012) (Kaplan, Mag. J.) (collecting cases). Plaintiffs do not plead specific facts showing a specific duty in the parties' contract. Accordingly, Plaintiffs' duty of good faith argument fails.

***3. Defendants did not "waive" their right to foreclose.*** – Plaintiffs assert that Defendants waived acceleration under the Note and their foreclosure rights because Defendants behaved "inconsistent[ly] or inequitab[ly]" with regard to the Note. Pls.' First Am. Compl. ¶ 26. Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008); *see also, e.g.*, *Watson II*, 2012 WL 381205, at *5. To prove waiver, Plaintiffs must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; [and] (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co.*, 262 S.W.3d at 778. As the Texas Court of Appeals has counseled:

> Intent is the key element in establishing waiver. The law on waiver distinguishes between a showing of intent by actual renunciation and a showing of intent based on inference. In the latter situation, it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party unequivocally manifested its intent to no longer assert its claim. This is a particularly onerous burden.

*RM Crowe Prop. Servs. Co. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 449-50 (Tex. App. – Dall. 2011, no pet.) (quoting *G. H. Bass & Co. v. Dalsan Prop.-Abeline*, 885 S.W.2d 572, 577 (Tex. App. – Dall. 1994, no writ)) (brackets omitted).

To establish that Defendants waived their right to accelerate the Note and foreclose, Plaintiffs must allege facts demonstrating that Defendants "unequivocally manifested [their] intent" not to foreclose or accelerate the Note. *RM Crowe Prop. Servs. Co.*, 348 S.W.3d at 449. Plaintiffs allege that Defendants' agent assured them that "their home was not scheduled for foreclosure." Pls.' First Am. Compl. ¶ 15. However, this statement does not demonstrate that Defendants unequivocally intended to waive their rights to accelerate or foreclose – it merely shows that Defendants' agents allegedly told Plaintiffs that their home was not *scheduled* for foreclosure. Plaintiffs have not alleged any other facts demonstrating that Defendants waived their right to accelerate the Note or foreclose. Accordingly, Plaintiffs' waiver argument also fails.

### B. Plaintiffs Fail to State a Claim for Anticipatory Breach of Contract

Under the same heading as their breach of contract claim, Plaintiffs allege that Defendants committed an anticipatory breach of contract. Pls.' First Am. Compl. ¶¶ 23-27. To prevail on this claim under Texas law, Plaintiffs must show (1) that Defendants absolutely repudiated an obligation, (2) Defendants lacked a just excuse for this repudiation, and (3) that

ORDER – PAGE 13

Plaintiffs suffered damage. *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Pub. Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App. – Dall. 1984, writ ref'd n.r.e.)); *see also, e.g.*, *Swim v. Bank of Am., N.A.*, 2012 WL 170758, at *4 (N.D. Tex. 2012) (Lynn, J.); *Watson II*, 2012 WL 381205, at *5. "An anticipatory repudiation of a contract may be based on either words or actions by a party that indicate an intention not to perform the contract according to its terms." *Swim*, 2012 WL 170758, at *4 (citing *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App. – Hous. [14th Dist.] 1984, no writ)). The party's declaration of intent to abandon its obligations under the contract must be positive and unconditional – that is, the party committing an anticipatory breach must recognize its duties but refuse to perform them. *Id.* (citing *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. App. – Austin 1951, no writ)); *Watson II*, 2012 WL 381205, at *5 (citing *Preston*, 240 S.W.2d at 487 and *Continental Cas. Co. v. Boerger*, 389 S.W.2d 566, 568 (Tex. App. – Waco 1965, writ dism'd)).

Though Plaintiffs' claim for anticipatory breach is difficult to understand, they clarify in their response that, as in their breach of contract claim, Defendants' failure to send Plaintiffs "a notice of default and right to reinstate in violation of Texas law and the contracts" constitute anticipatory breach of the contract. Pls.' Resp. 18. However, "[e]ven assuming Defendants did not provide required notices, that could render a foreclosure improper, but it would not constitute words or actions positively and unconditionally demonstrating an intent to abandon their obligations under" the Deed of Trust. *Swim*, 2012 WL 170758, at *5.

ORDER – PAGE 14

Moreover, to the extent that Plaintiffs claim that Defendants' conduct with regard to the short sale – for example, working with the Plaintiffs on the short sale and informing them that the property was not scheduled for foreclosure, Pls.' First Am. Compl. ¶ 15 – constituted an anticipatory breach of the Deed of Trust, the Court finds that Defendants' conduct "at worst [demonstrates that] Defendants gave conflicting messages to Plaintiffs." *Swim*, 2012 WL 170758, at *5. But "[s]uch inconsistencies fall quite short of the 'positive and unconditional' repudiation that is necessary to establish a claim for anticipatory breach of contract." *Watson II*, 2012 WL 381205, at *5 (citation omitted). Accordingly, Plaintiffs' anticipatory breach claim fails.

### C. Plaintiffs Fail to State a Claim For Unreasonable Collection Efforts

Plaintiffs claim that Defendants committed the tort of unreasonable collection efforts, alleging that Defendants "failed to provide Plaintiffs with the correct amounts due, imposed numerous additional charges upon Plaintiffs' mortgage loan account, and deceptively foreclos[ed]." Pls.' First Am. Compl. ¶ 29. Plaintiffs allege that this conduct caused them extreme emotional distress and mental anguish, slandered and defamed Plaintiffs' credit reputation, and exposed them to ridicule in the community, all of which resulted in loss of income and economic damages. *Id.* Under the Texas standards for unreasonable collection efforts, Plaintiffs fail to state a claim.

In Texas, "[u]nreasonable collection is an intentional tort." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. – Dall. 2008, no pet.). "To recover on this claim, Plaintiffs must prove that Defendants' debt collection efforts 'amount to a course of harassment that was willful, malicious, and intended to inflict mental anguish and bodily

harm.'" *Kazmi v. BAC Home Loans Servicing, L.P.*, 2012 WL 629440, at *11 (E.D. Tex. 2012) (citing *EMC Mortg. Corp.*, 252 S.W.3d at 868). Courts consider the reasonableness of a defendant's conduct on a case-by-case basis. *Id.* (citation omitted); *see also, e.g.*, *Obuekwe*, 2012 WL1388017, at *6. "Generally, 'mental anguish damages alone will not establish a right of recovery; the plaintiff must suffer some physical or other actual damages in order to be entitled to relief." *Kazmi*, 2012 WL 629440, at *11 (quoting *B.F. Jackson, Inc. v. CoStar Realty Info., Inc.*, 2009 WL 1812922, at *5 (S.D. Tex. 2009)).; *see also, e.g.*, *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982). And "[w]here a debt is owed to a lender, a claim for unreasonable collection cannot survive when the lender simply tries to recover the debt owed." *Woods*, 2012 WL 1344343, at *8; *see also, e.g.*, *DeFranseschi v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *11 (N.D. Tex. 2011) (Means, J.) (citing *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (Lynn, J.)).

Plaintiffs allege no facts suggesting that Defendants' conduct was willful or malicious, let alone that Defendants intended to inflict mental anguish and bodily harm in collecting Plaintiffs' debt. The Court considers Plaintiffs' claim that Defendants "deceptively foreclosed" to mean that Defendants misled them about the short sale process and the possibility that Defendants may foreclose. However, these allegations do not rise to the level of a willful unreasonable collection. *See, e.g.*, *Swim*, 2012 WL 170758, at *7 (considering almost identical claims and finding that "Defendants' actions that may have mislead Plaintiffs do not constitute a willful course of harassment intended to inflict bodily harm"); *Kazmi*, 2012 WL 629440, at *12 (arriving at a similar conclusion). Furthermore, Defendants' conduct in allegedly failing to provide Plaintiffs with the correct amounts due

and imposing additional charges may be negligent, but it does not rise to the level of willfulness or maliciousness. *See Woods*, 2012 WL 1344343, at *8 (considering almost identical claims and finding them to be negligent at most); *DeFranceschi*, 2011 WL 3875338, at *11 (same); *cf. Watson II*, 2012 WL 381205, at *7 (refusing to adopt a negligence standard for unreasonable collection efforts and noting that the most widely-accepted definition in Texas courts requires malicious intent).[12]

### D. Plaintiffs Successfully State Only One Claim Under DCPA

Plaintiffs claim that Defendants violated DCPA by deceiving Plaintiffs about the short sale and foreclosure, Pls.' First. Am. Compl. ¶¶ 15-19, misrepresenting the amounts Plaintiffs owed on the mortgage loan, wrongfully accelerating the foreclosure, imposing wrongful charges on Plaintiffs' mortgage account, and failing to properly credit Plaintiffs' payments, Pls.' First Am. Compl. ¶ 35. At the outset, the Court notes that attempted or actual foreclosure can violate DCPA. *See, e.g.*, *Rey*, 860 S.W.2d at 659 ("[W]rongful acceleration of a real estate note . . . violates [DCPA] . . . as a matter of law." (citation omitted)); *Swim*, 2012 WL 170758, at *5 (collecting cases); *Wilkerson*, 2011 WL 6937382, at *5-6; *Biggers v. BAC Home Loans Servicing, LP* ("*Biggers I*"), 767 F. Supp. 2d 725, 732 (N.D. Tex. 2011)

---

[12]As the plaintiffs did in *Swim*, the Plaintiffs here "attempt to define unreasonable collection efforts as merely 'efforts which an ordinary person of ordinary prudence in the exercise of ordinary care on his or her part would not have exercised under the same or similar circumstances,'" by quoting *Employee Finance Company v. Lathram*, 363 S.W.2d 899, 901 (Tex. App. – Fort Worth 1962), *aff'd in part, rev'd in part on other grounds by* 369 S.W.2d 927 (Tex. 1963). 2012 WL 170758, at *7. The Court notes that "[t]he language upon which Plaintiffs rely in so claiming is a single jury instruction." *Id.* And, as in *Swim*, "[t]he Court declines to adopt [*Lathram*'s] definition of unreasonable collection, and instead requires, as have numerous other courts, a willful course of harassment." *Id.*

(Fitzwater, C.J.) ("Based on the statutory definitions and the status of Texas case law, the court makes an *Erie*-guess that DCPA can apply to actions taken in foreclosing on real property."). However, Plaintiffs sufficiently plead only their section 392.304(a)(19) DCPA claim.

Section 392.301(a)(8) of DCPA prohibits a debt collector from using "threats, coercion, or attempts to coerce[,] . . . [including] threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). In their complaint, Plaintiffs fail to specify which of Defendants' actions violated the law. They argue in their response that Defendants' failure to send the required notices under section 52.001 of the Texas Property Code constitutes Defendants' legally prohibited action. However, Plaintiffs' complaint fails to identify threats, coercion, or attempts to coerce with regard to the notices or foreclosure. As this Court has noted,

> A "threat" is defined as "a communicated intent to inflict harm or loss on another or another's property." BLACK'S LAW DICTIONARY 1618 (9th ed. 2009). "Coercion" is defined as "compulsion by physical force or threat of physical force." *Id.* at 294. Defendants' alleged actions and communications in the course of loan negotiations simply do not rise to the level of threats or coercion to be considered actionable under the statute.

*Woods*, 2012 WL 1344343, at *6. Moreover, the statute "does not prevent a debt collector from exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings," TEX. FIN. CODE § 392.301(b)(3), such as foreclosing under the loan agreement, *Woods*, 2012 WL 1344343, at *6; *Swim*, 2012 WL 170758, at *5. Thus, the Court dismisses Plaintiffs' section 392.301(a)(8) claim.

ORDER – PAGE 18

Under section 392.303(a)(2), "a debt collector may not use unfair or unconscionable means . . .[to] collect[] or attempt[] to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2). In their complaint, Plaintiffs state, in a conclusory fashion, that Defendants "imposed wrongful charges on Plaintiffs' mortgage account," Pls.' First Am. Compl. ¶ 35, without providing any factual support. But "[s]uch an allegation is insufficient to put Defendants on fair notice of Plaintiffs' claims" under Rules 8 or 12(b)(6). *Swim*, 2012 WL 170758, at *6.[13] Thus, the Court also dismisses Plaintiffs' section 392.303(a)(2) claim.

Section 392.304(a)(8) provides that, "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt, or misrepresent[s] the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). Again, Plaintiffs provide only a conclusory allegation that "Defendants misrepresented the amounts allegedly owed by Plaintiffs on [their] mortgage loan," Pls.' First Am. Compl. ¶ 35, with no specific allegations or facts demonstrating that

---

[13]Moreover, "under the terms of the statute, a debt collector may charge additional fees if the parties have agreed to permit such charges under the contract." *McDonald v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 2122168, at *7 (N.D. Tex. 2012) (Boyle, J.). The deed of trust authorizes Defendants to charge various costs and expenses, including attorneys' fees and late fees, as a matter of course and in the event of a default. *See* Pls.' App. to Pls.' Resp. to Defs.' Mot. Dismiss, Deed of Trust, pp. 4-16. Plaintiffs provide no factual support in their complaint regarding how the alleged charges, which may be authorized under the note and deed, were "wrongful," and the Court therefore cannot ascertain that they has stated a claim under section 392.303(a)(2).

Defendants misrepresented the amounts owed.[14]  Accordingly, the Court dismisses Plaintiffs'

section 392.304(a)(8) claim.

Plaintiffs' section 392.304(a)(19) claim fares better.   Pursuant to section

392.304(a)(19), DCPA's "catchall provision," *e.g.*, *Woods*, 2012 WL 1344343, at *7, a debt

collector may not "us[e] any other false representation or deceptive means to collect a debt

or obtain information concerning a consumer," TEX. FIN. CODE § 392.304(a)(19).  "In order

for a statement by a party to constitute a misrepresentation under DCPA, Defendant must

have made a false or misleading assertion."  *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL

555155, at *9 (N.D. Tex. 2012) (Boyle, J.) (citing *Narvaez*, 757 F. Supp. 2d at 632).  Many

courts, including this one, have found that plaintiffs successfully state a claim under section

392.304(a)(19) where they allege that a defendant made affirmative statements that it would

not foreclose on the property during loan modification discussions.  *See, e.g.*, *Obuekwe*, 2012

WL 1388017, at *7; *Woods*, 2012 WL 1344343, at *7; *Swim*, 2012 WL 170758, at *6.

Similarly, Plaintiffs here allege that "Defendants' agents assured Plaintiffs that their home

was not scheduled for foreclosure despite" the notice of substitute trustee's sale.  Pls.' First

---

[14]In their response, Plaintiffs argue that Defendants "misrepresented the extent and status of [Plaintiffs'] debt by claiming they could never qualify for a loan modification because the amount of their debt was too high."  Pls.' Resp. 20.  However, Plaintiffs' overstate their complaint – Plaintiffs' complaint only alleges that Defendants told Plaintiffs they would have to apply online for a loan modification, and, when Plaintiffs went online, "they learned they did not qualify because the balance of the note was too high."  Pls.' First Am. Compl. ¶ 12.

Plaintiffs also state in their response that "Defendants misrepresented the extent of the debt in refusing to accept a buyer who would pay more than what was owed on the Note and more than the market value for the home, claiming the amount was inadequate."  Pls.' Resp. 20.  But the Court fails to see how Defendants' refusal to accept a short-sale offer misrepresented the amount of *Plaintiffs'* debt.

Am. Compl. ¶ 15.[15]  Thus, in step with other decisions of this Court, the Court denies

Defendants' motion to dismiss Plaintiffs' section 392.304(a)(19) claim.[16]

---

[15]Moreover, Plaintiffs claim that Defendants' negotiator sent them correspondence dated September 7, 2010 with an attached notice of the same date; the notice stated that Defendants denied one of Plaintiffs' short sale agreements because "seller has requested a different workout option."  Pl.'s First Am. Compl. ¶ 18.  Plaintiffs allege this statement is false because Plaintiffs had never spoken to this particular negotiator.  *Id.*

[16]Plaintiffs seek to recover for Defendants' alleged violations of DCPA under the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.50(h).  *See* TEX. FIN. CODE § 392.404 ("A violation of this chapter is a deceptive trade practice under [DPTA].").  However, Plaintiffs are not "consumers" under DTPA, and, therefore, they cannot recover under the statute.  To pursue a claim under DTPA, even through a tie-in statute such as DCPA, a plaintiff must be a "consumer" as DTPA defines it.  *See, e.g.*, *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App. – San Antonio 1996, no writ); *Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27-29 (5th Cir. 2010) (rejecting Plaintiffs' exact argument – that the DTPA's tie-in provision does not require "consumer" status); *Swim*, 2012 WL 170758, at *6; *Marquez v. Fed. Nat'l Mortg. Ass'n*, 2011 WL 3714623, at *5-6 (N.D. Tex. 2011) (Lindsay, J.); *Broyles v. Chase Home Fin.*, 2011 WL 1428904, at *3-4 (N.D. Tex. 2011) (Fish, J.).  The question of whether one is a consumer under DTPA is a question of law for the court to decide, *e.g.*, *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App. – San Antonio 2002, pet. denied); *Mendoza*, 932 S.W.2d at 608.

DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services," TEX. BUS. & COM. CODE § 17.45(4); *see also, e.g.*, *First State Bank v. Keilman*, 851 S.W.2d 914, 928 (Tex. App. – Austin 1993, writ denied), and it defines  "goods" as "tangible chattels or real property purchased or leased for use," TEX. BUS. & COM. CODE § 17.45(1).  Accordingly, a person who buys a home or property may be a consumer under DTPA because that home or property qualifies as a "good."  *See, e.g.*, *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984); *Broyles*, 2011 WL 1428904, at *4 (citing *La Sara Grain*, 673 S.W.2d at 567; *Maginn v. Norwest Mortg. Corp.*, 919 S.W.2d 914, 929 (Tex. App. – Austin 1996, no pet.)).  But the home or property must form the basis of the complaint, not the security instrument – that is, "where, as in this case, . . . the servicing or administration of the loan is merely incidental to a plaintiff's prior objective to purchase a residence, such events do not bestow consumer status upon the plaintiff for purposes of the DPTA."  *Woods*, 2012 WL 1344343, at *7; *see also, e.g.*, *Maginn*, 919 S.W.2d at 929; *Manno v. BAC Home Loans Servicing, LP*, 2011 WL 3844900, at *5 (W.D. Tex. 2011) ("[A]t the time of the acts of which he complains, [plaintiff] already owned the house subject to the Bank's mortgage interest.  As a matter of law, [plaintiff's] real property is not the basis of his complaint.  Thus, [plaintiff] does not qualify as a 'consumer' under DTPA  and does not have standing to bring a DPTA claim.").

ORDER – PAGE 21

### *E. Plaintiffs Fail to State Claims for Negligent Misrepresentation and Gross Negligence*[17]

Plaintiffs allege that Defendants made misrepresentations regarding the status of their mortgage account, including statements about the amount Plaintiffs' owed, about the validity of the debt, and that the property was not scheduled for foreclosure. Pls.' First Am. Compl. ¶¶ 43-44.

To establish a negligent misrepresentation claim in Texas, Plaintiffs must show that:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *see also Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.24 (Tex. 2002). "[A] negligent

---

[17]Plaintiffs argue that Defendants did not address or move to dismiss their claim for gross negligence. Pls.' Resp. 30. However, Plaintiffs titled their cause of action "Negligent Misrepresentation/Gross Negligence," making it ambiguous which of their allegations under this heading relates to each cause of action. Defendants moved to dismiss Plaintiffs' claim for negligent misrepresentation, addressing the allegations under Plaintiffs' "Negligent Misrepresentation/Gross Negligence" claim. *See* Defs.' Mot. Dismiss 10-12. Defendants motion to dismiss, therefore, likely applies to both causes of action.

Nevertheless, the Court may sua sponte address – and dismiss – Plaintiffs' gross negligence claim as long as it employs a fair procedure for doing so. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 409 (3d ed. 2004) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties."). Here, Defendants addressed gross negligence in their reply, *see* Defs.' Reply 10, and the Court granted Plaintiffs' motion to file a surreply, which also addressed Plaintiffs' gross negligence claim, *see* Pls.' Surreply 10. Accordingly, the Court has given both sides an opportunity to address Plaintiffs' gross negligence claim, and the procedure has therefore been fair to Plaintiffs.

misrepresentation claim must allege misstatement of an 'existing fact,'" *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007); *see also, e.g.*, *NY Life Ins. v. Miller*, 114 S.W.2d 114, 124 (Tex. App. – Austin 2003, no pet.), rather than a promise of future conduct, *Miller*, 114 S.W.2d at 124. Accordingly, a defendant's "promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." *BCY Water Supply Corp. v. Residential Inv., Inc.*, 170 S.W.3d 596, 603 (Tex. App. – Tyler 2005, no pet.).

At the outset, the Court notes that Plaintiffs successfully assert that Defendants made a representation about an existing fact with their allegation that "Defendants' agents assured Plaintiffs that their home was not scheduled for foreclosure despite Recontrust's correspondence of July 22, 2010."[18] Pls.' First. Am. Compl. ¶ 15. However, Plaintiffs' negligent misrepresentation claim fails because Plaintiffs plead only conclusory statements with regard to their alleged pecuniary loss, which do not suffice under *Twombly*. Plaintiffs state that "[t]he representations by Defendants involved a transaction to which they had a pecuniary interest" and that Defendants' conduct "caused Plaintiffs damages when it foreclosed . . . , including but not limited to court costs, actual damages and exemplary damages." Pls.' First Am. Compl. ¶ 44. But Plaintiffs do not allege any discernable pecuniary loss separate from the foreclosure itself. *See Eskridge*, 2011 WL 2163989, at *3

---

[18]Unlike forward-looking statements about a plaintiff's application for modification or that a defendant will or will not foreclose, which some courts have found fail to state a claim for negligent misrepresentation, *see, e.g.*, *Edwards v. Ocwen Loan Servs., LLC*, 2012 WL 844396, at *6 (E.D. Tex. 2012); *Eskridge v. Fed. Home Loan Corp.*, 2011 WL 2163989, at *3 (W.D. Tex. 2011), Defendants' alleged statement that no foreclosure was scheduled was then a statement of existing fact.

(dismissing plaintiff's negligent misrepresentation claim where the only pecuniary loss plaintiff suffered was the foreclosure of the property itself).

Furthermore, "[t]o recover damages for negligent misrepresentation, Plaintiffs' damages must be separate from their damages for breach of contract." *Swim*, 2012 WL 170758, at *7 (citing *Sloane*, 825 S.W.2d at 442 and RESTATEMENT (SECOND) OF TORTS § 552B (1977)). However, "Plaintiffs do not plead what actual damages they seek, separate from [their] claims for breach of contract, for the alleged negligent misrepresentation."[19] *Swim*, 2012 WL 170758, at *7. Accordingly, the Court dismisses Plaintiff's negligent misrepresentation claim.

---

[19]Plaintiffs are correct that, if a plaintiff can establish that he suffered injuries independent of his economic loss under the contract, he may bring a tort claim. *Wilkerson*, 2011 WL 6937382, at *6; *see Sw. Bell Tel. Co. v. DeLaney*, 809 S.W.2d 493, 494 (Tex. 1991). However, here, Plaintiffs provide only "general allegations of damages for the stigma of foreclosure, loss of creditworthiness, mental anguish, and value of time lost in attempting to correct Defendants' records," which does not suffice to plead *pecuniary loss* from Defendants' alleged negligent misrepresentation. *Swim*, 2012 WL 170758, at *7; *see* Pls.' First. Am. Compl. ¶ 50. Indeed, in *Sloane*, a case upon which Plaintiffs rely heavily, the Texas Supreme Court explicitly disallowed damages for mental anguish and lost profits for plaintiffs' negligent misrepresentation claim, and it remanded the case for the trial court to enter damages for *past pecuniary losses alone* pursuant to section 552B of the Restatement (Second) of Torts – which included, for example, money plaintiffs actually spent demolishing chicken houses in reliance on defendant's misrepresentation that defendant would approve plaintiffs' loan application. *Sloane*, 825 S.W.2d at 443.

Plaintiffs' claim for gross negligence also fails.[20] "[D]efendant[s] cannot be grossly negligent without being negligent." *Kia Motors Corp. v. Ruiz*, 348 S.W.3d 465, 492 (Tex. App. – Dallas 2011, no pet.); *see also, e.g.*, *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 535 (Tex. App. – Austin 2009, no pet.). Because Plaintiffs fail to state a claim for negligent misrepresentation – the only underlying negligence claim they bring – Plaintiffs cannot state a claim for gross negligence. The Court therefore dismisses this claim.[21]

### F. Plaintiffs State a Viable Texas Property Code Claim

Plaintiffs allege that "Defendants violated the Texas Property Code by failing to properly *file* notice under Section 51.002(b)." Pls.' First Am. Compl. ¶ 45 (emphasis added). Section 51.002(b) requires a lender to give notice of a foreclosure sale three ways:

---

[20]To establish a claim for gross negligence, a plaintiff must first establish that "the act or omission complained of . . . depart[s] from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others" when "viewed objectively from the [defendant's] standpoint." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008) (citing *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784-86 (Tex.2001)). Second, the defendant "must have [had] actual, subjective awareness of the risk involved and [chosen] to proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* (citing *Harrison*, 70 S.W.3d at 785).

[21]Moreover, as the Eastern District of Texas explained in *Watson I*:
Plaintiffs place the label "gross negligence" as a heading in conjunction with the negligent misrepresentation claim in the their Complaint, then do not mention "gross negligence" again in the Complaint. . . . Simply labeling part of the Complaint "gross negligence" does not allege a cause of action and is nothing more than a mere "label[] and conclusion[]" of the sort rejected by *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.
814 F. Supp. 2d at 736.

ORDER – PAGE 25

(1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

(2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

(3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

TEX. PROP. CODE § 51.002(b). The notices "must include a statement of the earliest time at which the sale will begin[ and] must be given at least 21 days before the date of the sale." *Id.* Under their property code claim, Plaintiffs appear only to take issue with notice under section 51.002(b)(2), which governs Defendants' filing requirements. *See id.* at § 51.002(b)(2).[22] Section 51.002(f) instructs the county clerk to "keep all notices filed under Subdivision (2) of Subsection (b) in a convenient file that is available to the public for examination." TEX. PROP. CODE § 51.002(f).

---

[22]Plaintiffs are adamant that their complaint does not allege a cause of action for wrongful foreclosure, Pls.' Resp. 18, though their complaint states that "Defendants' failure to provide notice to the public resulted in an inadequate sale price at the foreclosure sale . . . ." Pls.' First Am. Compl. ¶ 45. And as the Court states in footnote 6, above, it construes Plaintiffs' claims to be those they specifically alleged as their causes of action. Accordingly, the Court does not analyze Plaintiffs' claim as a wrongful foreclosure action, even if it may sound as though Plaintiffs allege a wrongful foreclosure claim. *But see Mitchell v. Deutsche Bank & Trust Co.*, 2012 WL 1670168, at *2 (N.D. Tex. 2012) (Ramirez, Mag. J.) (characterizing plaintiff's "failure-to-notify" claim as a wrongful foreclosure claim where plaintiff argued that the court should nullify the foreclosure on his home because defendant gave him insufficient pre-sale notification).

ORDER – PAGE 26

Defendants' notice of substitute trustee's sale[23] includes a file stamp from the Dallas County Clerk, dated August 16, 2010, "indicating that the notice of sale was filed as required by statute." *Montgomery v. SunTrust Mortg., Inc.*, 2012 WL 1353087, at *5 (N.D. Tex. 2012) (Furgeson, J.). However, Plaintiffs allege that they "personally went to the courthouse and looked through the foreclosure notices and did not see a notice of their home listed for foreclosure," Pls.' First Am. Compl. ¶ 45 – these notices were presumably in the file available for public inspection under section 51.002(f). Accordingly, there is a fact issue as to whether notice was on file with the clerk on August 16, 2010, which is better left for summary judgment or trial. The Court therefore declines to dismiss Plaintiffs' section 51.002(b)(2) claim.[24]

_____

[23]As a matter of public record, the Court may consider this notice in the Rule 12(b)(6) context. *See Cinel*, 15 F.3d at 1343 n.6; *Funk*, 631 F.3d at 783.

[24]In their complaint, Plaintiffs reference only Defendants' failure to file notice under their "Violation of Texas Property Code" claim. Other than a conclusory sentence in the factual recitation in their complaint, Plaintiffs never again address section 51.002(b)(3) – which provides that Defendants must "serv[e] written notice of the sale by certified mail" – in their complaint or briefing on Defendants' motion. (Indeed, they attach what appear to be letters from Defendant providing them notice of the sale to their surreply.) Thus, the Court does not interpret Plaintiffs' complaint to state a claim under section 51.002(b)(3). Plaintiffs also include a conclusory sentence in their factual recitation that "Plaintiffs' home was not posted for foreclosure at the courthouse [on September 7, 2010]." However, they do not allege that Defendants failed to post notice at the courthouse in violation of section 51.002(b)(1) – which requires Defendants to "post[] at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold" twenty-one (21) days prior to the foreclosure sale – again in their complaint or under their "Violation of Texas Property Code" heading. (Plaintiffs do argue that Defendants failed to post notice under section 52.001(b)(1) in their response. But Plaintiffs failed to plead this allegation in their complaint, which controls the Court's analysis under Rule 12(b)(6).) Indeed, the Court notes that "[i]f the notices are actually posted the required number of days prior to the sale, it is not essential that they remain intact and visible during every one of the intervening days." *Keilman*, 851 S.W.2d at 923 (quoting *Chambers v. Lee*,

### *G. Plaintiffs Successfully State Trespass to Try Title and Quiet Title Claims*

A trespass to try title suit "is a procedure by which rival claims to title or right of possession may be adjudicated." *Eskridge*, 2011 WL 2163989, at *4 (quoting *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex. 1983)). "The statute is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citations omitted). In Texas, trespass to try title suits have "strict . . . proof requirements." *Id.* To prevail on a trespass to try title claim, a plaintiff must rely on the strength of his own title, not the weaknesses of the defendant's title and "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Id.* (citing *Plumb v. Stuessy*, 617 S.W.2d 667, 668 (Tex. 1981)).

Relatedly, a suit to quiet title is an "equitable action that clears a valid title against a defendant's invalid claim to the property." *James v. Wells Fargo Bank, N.A.*, 2012 WL 778510, at *2 (N.D. Tex. 2012) (Boyle, J.) (citations omitted). "The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App. – Beaumont 2000, pet. denied) (quotation omitted). The purpose of such a suit is to "enable the holder of the feeblest equity right to remove from his way to legal title any unlawful hindrance," including "any deed, contract, judgment or other instrument not void on its face that purports to convey any interest in or make any charge

_____

566 S.W.2d 69, 73 (Tex. App. – Texarkana 1978, no writ)).

upon the land of a true owner, the invalidity of which would require proof." *Id.* The claimant "must show an interest of some kind, but it is error that the claimant must show fee simple or an uncontestable interest to prevail." *Katz v. Rodriguez*, 563 S.W.2d 627, 630 (Tex. App. – Corpus Christi 1977, writ ref'd n.r.e.) (citations omitted). Rather, "the plaintiff in a suit to quiet title must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Wright*, 26 S.W.3d at 579 (citation omitted). And, like a trespass to try title action, a "claimant must base his action on the strength of his own title." *Katz*, 563 S.W.2d at 629 (citing *Humble Oil & Ref. Co. v. Sun Oil Co.*, 191 F.2d 705 (5th Cir. 1951)).

It is undisputed that, before the foreclosure, Plaintiffs held title to the property.[25] The Court also understands, from Plaintiffs' complaint, that Defendants – one or all – purchased the property at the foreclosure sale. *Cf.* Pl.'s First Am. Compl. ¶ 48 ("Defendants have impermissibly declared Plaintiffs to be tenants at sufferance in the property in violation of state statutes and constitution."). However, Plaintiffs argue that Defendants' foreclosure was illegal because Defendants breached the Deed of Trust contract and violated section 51.002 of the Texas Property Code; therefore, Plaintiffs claim, they have superior title to the

---

[25]In Texas, a mortgage, even one secured by a deed of trust, does not transfer legal title or possession of the property to the mortgagee. *Hume v. Le Compte*, 142 S.W. 934, 935 (Tex. 1914) (explaining that a mortgage is "only security for a debt, and the title to the property remained in [the borrower], as well as the right of possession"); ALOYSIUS A. LEOPOLD, 5A TEXAS PRACTICE § 38.4 (3d ed. 2005) ("In Texas, a mortgage or deed of trust, being merely intended as a security for debts, confers no title upon the mortgagee or trustee but only a lien upon the property with a power of sale, and is defeasible upon condition of the timely payment of the indebtedness.").

property and Defendants' foreclosure purchase represents a cloud on their title. *Id.* ¶ 47.[26]

Because the Court does not dismiss Plaintiffs' Texas Property Code claim, above, Plaintiffs

have stated colorable claims for trespass to try title and quiet title. With an allegedly illegal

act which may render the foreclosure void, Plaintiffs' have "allege[d] right, title, or

ownership in [themselves] with sufficient certainty to enable the court to see [they] ha[ve]

a right of ownership that will warrant judicial interference." *Wright*, 26 S.W.3d at 579.

Accordingly, the Court does not dismiss Plaintiffs' trespass to try title and quiet title claims.[27]

### H. Plaintiffs Are Not Entitled to An Accounting or Declaratory Judgment

First, Plaintiffs fail to state a cause of action for accounting. Plaintiffs complaint

contains one line under their "accounting" claim: "Plaintiffs request an Order for accounting

of all transactions on their mortgage. Pls.' First Am. Compl. ¶ 39. The Eastern District of

---

[26]The Court notes that Texas law provides for wrongful foreclosure actions separate and apart from trespass to try title and quiet title suits. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. – Corpus Christi 2008, no pet.) ("The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." (citing *Charter Nat'l Bank-Hous. v. Stevens*, 781 S.W.2d 368, 371 (Tex. App. – Hous. [14th Dist.] 1989, writ denied)). However, Plaintiffs have not brought a wrongful foreclosure claim, so the Court addresses Plaintiffs' trespass to try title and quiet title claims themselves under Rule 12(b)(6).

[27]The Court notes that other courts in this Circuit have reasoned differently. *See, e.g.*, *Eskridge*, 2011 WL 2163989, at *4 (finding plaintiff could not bring a trespass to try title suit against defendant/mortgagees where plaintiff no longer had title to the property because the third-party foreclosure purchaser held the title); *Pinela-Navarro v. BAC Home Loans Servicing, L.P.*, 2011 WL 3666586, at *2 (W.D. Tex. 2011) (dismissing plaintiff's quiet title suit where court found plaintiff's complaint lacked "factual allegations regarding the strength of [plaintiff's] title to the property" and instead "focuse[d] entirely on the weaknesses of [defendant's] claim by taking issue with the foreclosure proceeding").

Texas recently encountered this exact pleading.  *See Watson I*, 814 F. Supp. 2d at 737.  It

explained:

> "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action."  *Brown v. Cooley Enters., Inc.*, No. 3:11–cv–0124–D, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011) (quoting *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App. – 2001, no pet.)).  Because Plaintiffs have made no more than an assertion of a right to an accounting, the court is left to determine whether Plaintiffs seek an accounting as a suit in equity or as a remedy.  If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues.  *Shields v. Ameriquest Mortg. Co.*, No. 05–06–01647–CV, 2007 WL 3317533, at *2 (Tex. App. – Dallas 2007, no pet.).  Only if this case goes to trial and it is determined that the Plaintiffs are owed damages would the issue of accounting as a remedy arise.  *Id.*
>
> If Plaintiffs' request for an accounting is a separate, equitable cause of action, it is a proper action "when the facts and accounts in issue are so complex that adequate relief cannot be obtained by law."  *Brown*, 2011 WL 2200605, at *1 (citing *Hutchings v. Chevron USA, Inc.*, 862 S.W.2d 752, 762 (Tex. App. – El Paso 1993, writ denied)).  But "[w]hen a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting."  *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App. – Houston [14th] 2002, pet. denied).

*Id.* at 737-38.  Here, Plaintiffs list "accounting" as one of their causes of action – interspersed

with Plaintiffs other causes of action in their complaint.  Accordingly, the Court interprets

Plaintiffs' request for an accounting as a separate, equitable cause of action rather than a

remedy.[28]  And, as in *Watson I*, "Plaintiffs' bare assertion that they are entitled to accounting

---

[28]In the "Prayer" section of their complaint, Plaintiffs request the Court to order Defendants "to render an accounting to Plaintiffs of the amounts owed."  Pl.'s First Am. Compl., "Prayer," p. 18.  However the Court need not address Plaintiffs' request for accounting as a remedy here.  *Watson I*, 814 F. Supp. 2d at 737 ("If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability

does not meet the standard of plausibility because they have not alleged that they are unable to attain pertinent information through ordinary discovery procedures." *Id.* at 738. The Court therefore dismisses Plaintiffs' request for an accounting.

Plaintiffs' declaratory judgment request likewise fails. The Declaratory Judgment Act is a procedural device; it creates no substantive rights and requires the existence of a justiciable controversy. *Lowe v. Ingalls Shipbldg.*, 723 F.2d 1173, 1179 (5th Cir.1984); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). "Thus, the Act provides no relief unless there is a justiciable controversy between the parties." *Kazmi*, 2012 WL 629440, at *15. As the Fifth Circuit has explained:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.
>
> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments.

---

issues. . . . Only if this case goes to trial and it is determined that the Plaintiffs are owed damages would the issue of accounting as a remedy arise." (citing *Shields*, 2007 WL 3317533, at *2)).

*Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir.2003) (citations and quotations omitted).  Federal Courts have broad discretion to grant or refuse a request for declaratory judgment.  *Kazmi*, 2012 WL 629440, at *14 (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)).

    Plaintiffs in this case seek a declaratory judgment regarding their breach of contract and Texas Property Code claims.  Pls.' First Am. Compl., "Prayer," at p. 17; *see* Pls.' First Am. Compl. ¶ 46.  However, the Court dismisses Plaintiffs' breach of contract claim, and it finds Plaintiffs' request for a declaratory judgment of their Texas Property Code claim redundant.  *See Swim*, 2012 WL 170758, at *8 ("Plaintiff's request for declaratory judgment is redundant, and the Court declines to consider it." (citing *Narvaez*, 757 F.Supp.2d at 636)); *Kougl v. Xspedius Mgmt. Co. of DFW*, 2005 WL 1421446, at *4 (N.D. Tex.2005) (dismissing as redundant a declaratory judgment claim seeking contract interpretation that would be resolved as part of a breach of contract action).  Accordingly, the Court refuses Plaintiffs' request that it issue a declaratory judgment.

## CONCLUSION

    The Court dismisses Plaintiffs' claims for breach of contract, anticipatory breach of contract, unreasonable collection efforts, certain violations of DCPA, negligent misrepresentation and gross negligence, an order of accounting, and a declaratory judgment.[29]  The Court does not dismiss Plaintiffs' claim under section 392.304(a)(19) of

---

[29]Plaintiffs have previously amended their complaint in response to a motion to dismiss.  The Court therefore denies Plaintiffs' global request to amend their complaint in unspecified ways, *see* Pls.' Resp. 30.  This is, however, without prejudice to Plaintiffs' requesting leave to make specific amendments to respond to the deficiencies found in this Order if they are able to make the requisite showing of good cause.

DCPA or their claims for violations of the Texas Property Code, trespass to try title, and quiet title.

Signed July 30, 2012.

David C. Godbey
United States District Judge